NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LAMONT BOYD, | |
| Plaintiff, | Civ. No. 17-6098 (JMV) (JBC) |
| v. | **OPINION** |
| JOHN DOE, Bridgeton Police Dep't, *et al.*, | |
| Defendants. | |

APPEARANCES:
LAMONT BOYD
South Woods State Prison
Bridgeton, NJ 08302
    Plaintiff, *pro se*

**VAZQUEZ**, District Judge

    Plaintiff, Lamont Boyd, is a state prisoner incarcerated at the South Woods State Prison in Bridgeton, New Jersey. He is proceeding *pro se* with a civil rights complaint filed pursuant to 42 U.S.C. § 1983. (ECF No. 1). The Court herein screens the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit pursuant to 28 U.S.C. § 1915(e)(2)(B). For the reasons set forth below, this Court will dismiss with prejudice Plaintiff's claims against Defendants John Doe, Lanigan, Robinson, Gentilini, Nogan, Hoffman, Klansky, Garcia and Shang in their official capacities. The Court will also dismiss without prejudice Plaintiff's claims against Defendants Jane Doe, Hoffman, Klansky, Garcia and Shang in their personal capacities.

I.  BACKGROUND

The allegations of the complaint are construed as true for purposes of this screening opinion. The complaint names ten defendants: (1) John Doe-Bridgeton Police Department; (2) Gary M. Lanigan-Commissioner of Department of Corrections; (3) George Robinson-Administrator of Northern State Prison; (4) Judith Gentilini-Administrator at Albert C. Wagner Youth Correctional Facility; (5) Patrick Nogan-Administrator at New Jersey State Prison; (6) John Hoffman-New Jersey Attorney General; (7) Dr. John Shang-Psychiatrist at South Woods State Prison; (8) Dr. Jane Klansky- Psychiatrist at Northern State Prison; (9) Dr. Manuel Garcia-Psychiatrist at Norther State Prison; (10) Jane Doe- Manufacturer of Olanzapine. Plaintiff expressly sues John Doe – Bridgeton Police Department, Lanigan, Robinson, Gentilini, Nogan and Jane Doe – Manufacturer of Olanzapine only in their official capacities. Comparatively, Plaintiff sues Shang, Klansky and Garcia in both their official and individual capacities. Plaintiff is not clear about the capacity in which he sues Hoffman, therefore, this Court will presume he is suing Hoffman both in his official and individual capacities.

Plaintiff's period of incarceration at Albert C. Wagner Correctional Youth Facility ended on September 14, 2015. (ECF No. 1). He then spent the latter part of September 2015, at the New Jersey State Prison Stabilizing Unit. (*Id.*) In October 2015, he was subsequently transferred to the Administrative Segregation Unit at Northern State Prison. (ECF No. 1). In April 2015, he was transferred to the Therapeutic Care Unit at Northern State Prison. (ECF 1). Finally, in October of 2016, he was transferred to South Woods State Prison. (ECF 1).

In his Complaint, Plaintiff alleges the following, among other things:

> At all four of these prisons I was subjected to officers using a device/transmitter to speak to me and amplify my voice broadcasting it to the prison population. This device/transmitter was used to mess with my brain waves causing induced psychosis

> and altering and inducing my emotions. This device was used to send and receive digital imagery.
>
> On February 29, 2016 I spoke with Dr. Manuel Garcia and explained above statement. He diagnosed me with schizophrenia and offered me medication which I took. The medication was Olanzapine.
>
> In April of 2016 I was placed in the Therapeutic Care Unit (T.C.U.) at Northern State Prison. While there I noticed a growth of breast tissue in my chest.
>
> In June of 2016 I started refusing the Olanzapine. Afraid of gynoclamastia [sic] I asked to be tested. The test showed elevated levels.
>
> On June 13, 2016 Dr. Jane Klansky ordered a forced medication hearing.
>
> On June 15, 2016 I was placed on forced medication protocol. In the event that I refuse to take my medication I'm to be strapped down and injected with Olanzapine.
>
> Between July and October of 2016 I was given an extensive psychiatric evaluation by a Ms./Dr. Livengood. The results ruled out schizophrenia and diagnosed me with Post Traumatic Stress Disorder (P.T.S.D.).
>
> In October of 2016 I was transferred to South Woods South Prison.
>
> On January 25, 2017 Dr. John Shang ordered forced medication and was granted.
>
> Presently I am taking medication for schizophrenia and officers are still subjecting me to their device/transmitter.

(ECF No. 1 at 3-4).

Plaintiff alleges that he filed a complaint on June 9, 2016, with the Special Investigation Division at Northern State Prison. (ECF No. 1 at 3). He then filed a grievance with the administration at South Woods State Prison on November 11, 2016, to which he received a response that it was "noted." (*Id.*) Lastly, he wrote a complaint to the New Jersey Department of Corrections and then-Acting Attorney General John Hoffman on January 24, 2017. (*Id.*)

Plaintiff brings claims alleging violations of his Fourth, Sixth and Eighth Amendment rights. (ECF 1 at 4). He alleges that the Fourth Amendment is implicated by the four facilities' use of the "device/transmitter." (*Id.*) He further alleges that the prison medical personnel and the drug manufacturer's misfeasance and nonfeasance implicate the Eighth Amendment's protections against cruel and unusual punishment. (*Id.*) He seeks relief in the form of an injunction that includes transfer to a different correctional facility and cessation of involuntary medication, monetary damages totaling an amount of 11.5 million dollars and punitive damages totaling an amount of five million dollars. (*Id.*).

II.  STANDARD OF REVIEW

This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(b) and 1915A because Plaintiff is a prisoner proceeding *in forma pauperis* and is seeking relief from government employees. Under the Prison Litigation Reform Act, Pub.L. 104–134, §§ 801–810, 110 Stat. 1321–66 to 1321–77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, see 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

Every complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure, including Rule 8. A plaintiff's obligation to provide, in his complaint, the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ... . Factual allegations must

be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). That is, a complaint must assert "enough facts to state a claim to relief that is *plausible on its face*." *Id.* at 570 (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n. 3 (3d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679); *see also Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (citations omitted). Thus, a court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citations omitted).

In general, where a complaint subject to statutory screening can be remedied by amendment, a district court should not dismiss the complaint with prejudice, but should permit the amendment. *See Denton v. Hernandez*, 504 U.S. 25, 34 (1992); *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002) (noting that leave to amend should be granted "in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment"), cited in *Thomaston v. Meyer*, 519 F. App'x 118, 120 n.2 (3d Cir. 2013); *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 453 (3d Cir. 1996).

Finally, in determining the sufficiency of a *pro se* complaint, the Court must be mindful to accept its factual allegations as true, *see James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012), and to construe it liberally in favor of the plaintiff, *see Haines v. Kerner*, 404 U.S.

5

519, 520-21 (1972); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

III. DISCUSSION

Plaintiff seeks to bring claims against police, state officials, prison administrators, medical staff, and a drug manufacturer for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2255, 101 L.Ed.2d 40 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

A. John Doe, Bridgeton Police Department

Plaintiff first names John Doe of the Bridgeton Police Department as a defendant in this action. (ECF No. 1 at 1). Plaintiff, however, has pled no facts connecting Doe or the Bridgeton Police Department to the actions about which he complains. In the event that Plaintiff is using the John Doe designation as a catch-all for the entire Bridgeton Police Department, the Bridgeton Police Department is not a proper Defendant and must be dismissed from this action with prejudice. A police department is not an entity that can be sued under Section 1983:

6

> A New Jersey police department is not an independent entity with the capacity to sue and be sued, but only "an executive and enforcement function of municipal government." N.J.S.A. 40A:14-118. The case law under Section 1983 uniformly holds that the proper defendant is therefore the municipality itself, not the police department. *See Jackson v. City of Erie Pol[.] Dep't*, 570 F. App'x 112, 114 (3d Cir. 2014) (per curiam; not precedential) ("We further agree with the District Court that the police department was not a proper party to this action. Although local government units may constitute 'persons' against whom suit may be lodged under 42 U.S.C. § 1983, a city police department is a governmental sub-unit that is not distinct from the municipality of which it is a part.") (citation omitted)[;] [*s*]*ee also Boneberger v. Plymouth Twp.*, 132 F.3d 20, 25 n. 4 (3d Cir. 1997) ([c]ourt[s] "treat[] the municipality and its police department as a single entity for purposes of section 1983 liability"); *Michaels v. State of New Jersey*, 955 F. Supp. 315, 329 n. 1 (D.N.J. 1996).

*Rivera v. Zwiegle*, No. 13-3024, 2014 WL 6991954, at *3 (D.N.J. Dec. 9, 2014).

The proper defendant would be the city of Bridgeton, however Plaintiff does not identify the city's involvement either. *See id.* ("[E]ven if the amended complaint had properly named the municipality as a defendant, it would not state a claim. A municipality cannot be held vicariously liable for the acts of its officers via *respondeat superior*."). Finally, to the extent that Plaintiff has named a fictitious officer of the Bridgeton Police Department, he has set forth no facts to support a claim against him. *Iqbal*, 556 U.S. at 678 (2009)).

Therefore, this Court will dismiss without prejudice Plaintiff's Section 1983 claims against John Doe – Bridgeton Police Department for failure to state a claim without prejudice. Because Plaintiff is proceeding *pro se*, the Court notes that he cannot sue the police department pursuant to Section 1983.

B. <u>Dr. John Shang, Dr. Jane Klansky, Dr. Manuel Garcia</u>

The Complaint next names three prison medical professionals as defendants: Dr. John Shang, Dr. Jane Klansky, and Dr. Manual Garcia. Plaintiff alleges the following:

7

> The actions of defendants Dr. John Shang, Dr. Jane Klansky, Dr. Manual Garcia . . . in failing to inform plaintiff of the side effects of Olanzapine, resulting in gynoclamastia [sic] and in misdiagnosing and wrongly medicating plaintiff constitutes depraved indifference in violation of the Eighth Amendment to the United States Constitution.

(ECF No. 1 at 4).

Construing Plaintiff's allegations liberally, this Court construes his complaint to allege Eighth Amendment claims for misdiagnosis, forced medication, and deliberate indifference to the side effects of the medication. At the outset, to the extent that Plaintiff is suing these three defendants for monetary damages in their official capacities, he cannot recover. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 72-73 (1989). Furthermore, although Plaintiff does not specify which of the defendants he is suing for injunctive relief, Plaintiff was transferred to South Woods Prison and is therefore no longer under Drs. Klansky and Garcia's care, consequently rendering any request for injunctive relief against them moot. *See Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003). Accordingly, the remaining allegations against the medical professional defendants involve the claims of misdiagnosis, forced medication and deliberate indifference against all three doctors in their personal capacity. Moreover, Petitioner's request for injunctive relief against Dr. Shang in his official capacity will be assessed.

With respect to sufficiently stating an Eighth Amendment claim, Plaintiff must allege that his medical needs are serious and that the defendants showed deliberate indifference to those needs. *See West v. Keve*, 571 F.2d 158, 161 (3d. Cir. 1978). Conduct that rises to a level of deliberate indifference requires a showing by the plaintiff that he had a serious medical need and that the defendant was aware of this need and was deliberately indifferent. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a subjective standard, based on a defendant's state of mind[.]" *Goodrich v. Clinton Cnty Prison*, 214 F. App'x 105, 112 (3d Cir.

2007). Consequently, the Court must undertake a fact-sensitive analysis of the circumstances surrounding the alleged violation. *See Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970).

i. Misdiagnosis

Plaintiff submits that Dr. Manuel Garcia initially diagnosed Plaintiff with schizophrenia in February of 2016, and subsequently prescribed Olanzapine. (ECF No. 1 at 3). Several months later, Plaintiff was evaluated by another psychiatrist, Dr. Livengood, who "ruled out schizophrenia" and diagnosed Plaintiff with post-traumatic stress disorder. (ECF No. 1 at 3). While Plaintiff's factual allegations suggest that he was misdiagnosed, the alleged misdiagnosis is insufficient to state a § 1983 claim because they amount to, at most, claims of negligence or medical malpractice. *See Coudriet v. Vardaro*, 545 F. App'x 99, 104 (3d Cir. 2013) (citing *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) ("Claims of negligence or medical malpractice do not constitute deliberate indifference.")). Consequently, Plaintiff has failed to state an Eighth Amendment claim against these three defendants based on an alleged medical misdiagnosis.

ii. Forced Medication

Plaintiff's next claim against the three defendants concerns his being forced to take medication for his schizophrenia. With respect to raising such a claim, the Third Circuit has stated as follows:

> [U]nder the Due Process Clause of the Fourteenth Amendment, prison inmates "possess[ ] a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs....: *Washington v. Harper,* 494 U.S. 210, 221, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). But psychotropic medication may be administered against an inmate's wishes where doing so is reasonably related to the DOC's legitimate penological interests, *see id.* at 223, 110 S.Ct. 1028. Those interests include "combating the danger posed by [the inmate] to both himself and others ... in a prison environment, and "provid[ing] prisoners with medical treatment consistent not only

> with their own medical interests, but also with the needs of the institution." *Id.* at 225, 110 S. Ct. 1028. Ultimately, "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227, 110 S. Ct. 1028.
>
> Certain procedural protections are required before an inmate can be medicated against his will, but where administrative hearing procedures comport with procedural due process, a judicial hearing is not required as a prerequisite to forcing medication on a mentally ill inmate. *See id.* at 231, 110 S. Ct. 1028. In *Washington,* the Supreme Court approved the use of an independent administrative hearing committee which reviews the medication decision made by the psychiatrist, and gives independent consideration to whether the inmate suffers from a mental disorder, and whether, as a result of the disorder, he is a danger to himself or others, *see id.* at 232–35, 110 S.Ct. 1028. Additional protections approved of include whether the inmate is permitted to be present at the hearing, and whether periodic reviews are conducted. *See id.*

*Santos v. Bush*, 503 F. App'x 117, 120 (3d Cir. 2012), *as amended* (Nov. 13, 2012); *see also Aruanno v. Glazman*, 316 F. App'x 194, 195 (3d Cir. 2009) ("[T]he decision of a medical professional to force medicate a prisoner is presumed valid, 'unless it is shown to be such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment.'") (citing *White v. Napoleon*, 897 F.2d 103, 113 (3d Cir. 1990)).

Plaintiff asserts that no more than three months after Dr. Garcia made the schizophrenia diagnosis and prescribed Olanzapine, Plaintiff noticed breast tissue growth in his chest. He then refused to take Olanzapine and requested testing that revealed "elevated levels." (*Id.*) Thereafter, Dr. Klansky ordered a forced medication hearing. Then, Plaintiff alleges he was placed on a medication protocol so that if he refused to take Olanzapine, he would be forced to take it. A subsequent forced medication hearing was conducted on August 11, 2016, which

resulted in the same result. (ECF No. 1 at 3). In October 2016, he was transferred to South Woods State Prison. While there, Dr. John Shang's order to force Plaintiff to take his medication "was granted." (ECF No. 1 at 3).

This Court finds Plaintiff's allegations are insufficient to state a forced medication claim against these three defendants. As indicated above, prisons have the right to forcibly administer medications to inmates if it is deemed necessary to carry out valid medical and penological objectives. *See Santos*, 503 F. App'x at 120; *Aruanno*, 316 F. App'x at 195. Thus, the question then becomes whether Plaintiff's due process rights were violated when he was forced to take his medication. Plaintiff admits in his Complaint that he received forced medication hearings. He does not allege any procedural due process violations related to these hearings. Accordingly, Plaintiff fails to adequately state a claim against the three defendants based upon his forced medication. *Accord Hammler v. Aviles*, No. 17-1185, 2018 WL 1258251, at *2-3 (S.D. Cal. Mar. 12, 2018). Nevertheless, , the dismissal of this claim will be without prejudice.

   iii. Deliberate Indifference

Plaintiff also alleges that prison officials were indifferent to his concerns about the schizophrenia diagnosis as well as the medication's side effects. (ECF No. 1 at 4).

As to the alleged misdiagnosis, with respect to Dr. Garcia, the treating doctor who first diagnosed Plaintiff as schizophrenic, Plaintiff's Eighth Amendment claim is not sufficiently pled. As previously discussed, misdiagnosis does not amount to deliberate indifference under the Eighth Amendment. Next, with respect to Dr. Klansky, Plaintiff has not alleged any facts that establish that she was in any way involved in his initial diagnosis or any subsequent testing or evaluation. Even if the facts did support that she played a role in Plaintiff's misdiagnosis, this claim is still foreclosed by well-settled law. *See Coudriet*, 545 F. App'x at *104. Finally, as to

11

Dr. Shang, Plaintiff has not alleged any facts to support that Dr. Shang was involved in any subsequent evaluations or diagnosis. However, even if he was, any allegations of misdiagnosis would be barred by the immediately aforementioned law.

As to the alleged side effects, Plaintiff also states that Dr. Klansky switched his medication from Olanzapine to Abilify after the test results returned. He claims that he was then advised that involuntary medication may be ordered in the event that he refused the Abilify. (CM-ECF No. 1 at 3). However, Plaintiff never states whether the prison doctor explained the reason for the switch to Abilify, how if at all the switch was in response to Plaintiff's concerns about Olanzapine's side effects, or whether Plaintiff actually did object to the Abilify prescription. *See White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("There may . . . be several acceptable ways to treat an illness.")

Plaintiff alleged facts do not plausibly support a claim of deliberate indifference. Even if this Court was to accept that the breast tissue growth was a serious medical need, Plaintiff has not demonstrated that Defendants Garcia, Klansky, or Shang were deliberately indifferent to Plaintiff's medical predicament. Indeed, Plaintiff indicates that his medication was changed after he protested the Olanzapine administration. (ECF No. 1 at 3). For these reasons, Plaintiff has failed to sufficiently state a meritorious Eighth Amendment claim against the prison medical professionals for their supposed deliberate indifference to the prescribe medication's side effects.

C. <u>Gary M. Lanigan, Commissioner of New Jersey Department of Corrections, George Robinson-Administrator at Northern State Prison, Judith Gentilini-Administrator Albert C. Wagner Youth Correctional Facility, Patrick Nogan-Administrator New Jersey State Prison</u>

Plaintiff names Commissioner Lanigan, Northern State Prison Administrator Robinson, Albert C. Wagner Youth Correctional Facility ("Wagner") Administrator Gentilini and New Jersey State Prison Administrator Nogan as defendants in their official capacity only. A suit

12

against a state official in his official capacity is a suit against the official's office, thus, making it no different from a suit against the state itself. *Will*, 491 U.S. at 71. Plaintiff's claims against state officials in their official capacity are not permissible because states are not persons for purposes of Section 1983. *Id.* at 65-67. Therefore, this Court will dismiss Plaintiff's claims for monetary damages against these defendants as Plaintiff only sued them in their official capacities.

        i.        Injunctive Relief

Plaintiff also seeks injunctive relief in the form of a transfer to a Connecticut prison as well as an order so that he no longer has to take his medication. With respect to Defendants Robinson, Gentilini and Nogan, Plaintiff's transfer to a different prison facility renders moot his request for injunctive relief. *Jerry v. Francisco*, 632 F.2d 252, 255 (3d Cir. 1980) (citing *Preiser v. Newkirk*, 422 U.S. 395, 403, 95 S.Ct. 2330, 2335, 45 L.Ed.2d 272 (1975)).

Plaintiff's claims for injunctive relief against Defendant Lanigan in his official capacity also will be dismissed for failure to state a claim. While the Eleventh Amendment's sovereign immunity provision precludes Plaintiff's claims against Lanigan for monetary damages, it does not prohibit claims for prospective injunctive relief against such state officials. *Hindes v. F.D.I.C.*, 137 F.3d 148, 165 (3d. Cir. 1998) (holding that a state official may be sued in his official capacity for prospective injunctive relief)).

It appears as if Plaintiff may be attempting to bring a supervisory liability claim against Lanigan arising out of his underlying claims related to his medication. As illustrated above, Plaintiff has failed to state an underlying claim arising as to his medical care. As a result, he also fails to state a supervisory claim against Lanigan as supervisor.

Furthermore, this Court analyzes supervisory claims using one of two theories. A supervisor can be held liable if he "established and maintained a policy or custom which directly caused the constitutional harm" and the supervisor can also be liable if "participated in violating plaintiff's rights, directed others to violate them, or as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)). To establish a claim under the first theory, Plaintiff would have to show (1) the existence of a policy or practice that created an unreasonable risk of an Eighth Amendment violation; (2) the supervisor's awareness of the creation of the risk; (3) the supervisor's indifference to the risk; and (4) that the plaintiff's injury resulted from this policy or practice. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Deliberate indifference can be demonstrated by "evidence that the supervisory official failed to respond appropriately in the face of a pattern of such injuries. *Id.* To establish a claim under the second theory, Plaintiff would have to show (1) that the prison official had knowledge of the prisoner's problem (2) that the prison official either failed to act or took any ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference, and (3) a causal connection exists between the official's response and the harm. *Sample*, 885 F.2d at 1110.

Here, Plaintiff appears to be alleging a policy or custom theory. The Complaint, however, contains insufficient factual matter to suggest that any policy or practice created the harm that Plaintiff alleges. Assuming *arguendo*, Plaintiff did sufficiently plead that a policy or practice, Plaintiff has not sufficiently asserted that Lanigan was aware of it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120,137 (3d Cir. 2001). Plaintiff alleges that the complaint he filed with the Department of Corrections was forwarded to the Special Investigation Division in January of

14

2017, and nothing more.  Plaintiff has not plausibly alleged that the defendant was aware of a pattern of behavior that posed a risk to plaintiff.

Accordingly, Plaintiff's request for injunctive relief against Defendant Lanigan is dismissed without prejudice.

          ii.        Alleged Device/Transmitter Fourth Amendment Claims

Finally, Plaintiff asserts a Fourth Amendment claim against Defendants Lanigan, Robinson, Gentilini and Nogan, alleging that the prisons' use of a "device/transmitter" violated his right to be free from unreasonable search and seizures.  However, Plaintiff's description of how this alleged device controlled his thoughts and emotions constitutes a "fantastic or delusional scenario," that would support dismissal of the claims as frivolous.  (ECF No. 1 at 3). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989) (holding that 42 U.S.C. § 1915(d)'s frivolousness standard provides judges with the authority to dismiss claims "describing fantastic or delusional scenarios")); *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them" and upholding district court's dismissal as frivolous prisoner's claim that prison employees planted "Government Micro Eye Cameras" in his food to provide them with a means of keeping tabs on him).  Therefore, all claims regarding the use of the "device/transmitter" are dismissed with prejudice as frivolous as to all defendants.

    D.  <u>John Hoffman-Acting Attorney General of New Jersey</u>

Plaintiff names Hoffman as a defendant but does not distinguish whether the action is being brought against Hoffman in his official or personal capacity.  Taking into account Plaintiff's *pro se* status and construing his submissions liberally, *See Mala*, 704 F.3d at 244-46,

15

the Court finds that Plaintiff has not asserted any factual allegations that would support that Hoffman had personal involvement in the alleged harm. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) ("[D]efendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*). Moreover, this Court requires that allegations of actual knowledge and acquiescence be pleaded with "appropriate particularity." *Id.*; *see also Boykins v. Ambridge Area School Dist.*, 621 F.2d 75, 80 (3d Cir. 1980).

Here, the only substantive allegation against Hoffman is that Plaintiff asserts that he wrote a complaint to Hoffman on January 24, 2017. Plaintiff submits that the Department of Corrections responded to his complaint that was written on the same day. (ECF No. 1 at 3-4). Plaintiff has not alleged what Hoffman could have done differently. Accordingly, the claim against Hoffman in his official capacity will be dismissed with prejudice. The claim against Hoffman in his personal capacity will be dismissed without prejudice.

E. Jane Doe- Olanzapine Manufacturer

Lastly, Plaintiff sues Jane Doe, Olanzapine manufacturer, in her official and personal capacity. To state a viable Section 1983 claim, a plaintiff must allege that he was deprived of a federal constitutional or statutory right by a state actor. *Leshko v. Servis*, 423 F.3d 337, 229 (3d. Cir. 2005).

Here, Plaintiff has not alleged any facts demonstrating that Jane Doe or the pharmaceutical company that she presumably represents is anything other than a private entity. This analysis requires the Court to ask whether "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* at 339 (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351, 95 S. Ct. 449, 42

L.Ed.2d 477 (1974)). Plaintiff has not alleged any facts that Jane Doe is a state actor nor has Plaintiff made any factual allegations about the drug manufacturing company.

Accordingly, the Court will dismiss Plaintiff's claims against Jane Doe without prejudice.

IV. MOTION TO APPOINT PRO BONO COUNSEL

Plaintiff filed a Motion to Appoint Pro Bono Counsel that is denied for the following reasons. (ECF No. 3). The threshold question when considering such a motion is whether "the plaintiff's claim [has] some merit in fact and law." *Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997) (citation omitted). Petitioner has raised his indigency as well as the complexity of the issues raised in his complaint as factors supporting his motion. Nonetheless, the Court's dismissal of this case for the reasons already stated in this opinion, eliminate the need to review well-established factors courts usually consider when deciding motions to appoint pro bono counsel. *See Tabron v. Grace*, 6 F.3d 147, 156 (3d Cir. 1993). Therefore, Plaintiff's Motion to Appoint Pro Bono Counsel is denied without prejudice..

V. CONCLUSION

For the foregoing reasons, the Court will (1) dismiss with prejudice Plaintiff's claims against Defendants Lanigan, Robinson, Gentilini, Nogan, Hoffman, Klansky, Garcia, and Shang in their official capacities; and (2) dismiss without prejudice Plaintiff's claims against Defendants John Doe, Jane Doe, Hoffman, Klansky, Garcia, and Shang in their personal capacities. Plaintiff has sixty (60) days to file an amended complaint which addresses the deficiencies noted in this Opinion. If Plaintiff fails to do so, this matter will be dismissed with

prejudice, which means that the case will be dismissed and Plaintiff will not be able to sue the defendants based on the allegations in his Complaint. An appropriate Order accompanies this Opinion.

s/ John Michael Vazquez  
JOHN MICHAEL VAZQUEZ  
United States District Judge

Dated: 7/2/18